UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA DISABILITY RIGHTS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | )    Case no. 1:18-cv-2106 |
| NEUROPSYCHIATRIC HOSPITALS LLC, | ) ) ) ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES, DECLARATIVE AND INJUNCTIVE RELIEF**

1.  Plaintiff Indiana Disability Rights ("IDR"), an independent state agency, is Indiana's designated system authorized by Congress to provide protection and advocacy services to individuals with mental illness, developmental disabilities, and individuals with other disabilities.

2.  Pursuant to its statutory authority, IDR has undertaken an initiative to monitor the conditions of facilities and patients in the psychiatric hospitals owned by defendant NeuroPsychiatric Hospitals LLC.

3.  Upon information and belief, NeuroPsychiatric Hospitals LLC (hereinafter "defendant") operates three psychiatric hospitals within Indiana that provide inpatient mental health treatment. Defendant's corporate office is located in South Bend, Indiana, and it currently owns and operates hospitals in Indianapolis, Mishawaka, and Bremen with a facility under development in Northwest Indiana.

4.  Defendant, by counsel, has denied IDR staff access to its facility, staff and patients within NeuroPsychiatric Hospital of Indianapolis ("NPHI") located at 6720 Parkdale Place, Indianapolis,

Indiana 46254. IDR has been forced to bring this action against defendant seeking access to its facilities, patients and employees in accord with IDR's federal statutory mandate.

5.  IDR seeks declaratory, injunctive, and monetary relief against defendant for its refusal to allow IDR access to monitor its facility as expressly authorized by law. IDR filed the instant lawsuit after making repeated failed efforts to resolve this matter with defendant.

## Nature of the Action

6.  The right of IDR, as the Protection and Advocacy System for Indiana, to bring this action for unaccompanied access to defendant's facilities is provided by the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801 et seq., and its supporting regulations at 42 C.F.R. § 51.42, which state:

> [IDR] shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. Residents include adults or minors who have legal guardians or conservators. P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview. This access is for the purpose of:
>
> (1)  Providing information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.
>
> (2)  Monitoring compliance with respect to the rights and safety of residents; and,
>
> (3)  Inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

42 C.F.R. § 51.42(c)(1-3).

## Jurisdiction and Venue

6.  Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred within this district.

### P&A Monitoring Access Authority

8.      In 1978, the Protection and Advocacy for People with Disabilities ("PADD Act") established the Protection and Advocacy ("P&A") System to monitor and investigate incidents of abuse and neglect and to pursue legal, administrative, and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. Congress extended the protection and advocacy mandate to cover individuals with mental illness with the enactment of the PAIMI Act in 1986.

9.      To receive federal funding under the PAIMI, PADD, and PAIR Acts, states must have P&A system in effect. IDR is, and has always been, designated as Indiana's P&A system.

10.     The PAIMI and PADD Acts provide IDR reasonable unaccompanied access to all residents of a facility at reasonable times to provide P&A service and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, to meet and communicate privately with service recipients, both formally and informally, and to view and photograph all areas of the facility that are used by residents or are accessible to residents. 42 U.S.C 10805(3); 42 C.F.R. 51.42(c) and (d); 42 U.S.C. 15043(H); 45 C.F.R. 1326.21(e) and (f).

11.     Under the PAIMI Act, "any public or private residential setting that provides overnight care accompanied by treatment services" is a facility which a P&A is authorized to access and monitor.

12.     "Facilities include, but are not limited to the following: **general and psychiatric hospitals**, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless

3

shelters, and jails and prisons, including all general areas as well as special mental health or forensic units." 42 C.F.R. § 51.2 (emphasis added).

13. Further, the PAIMI Act defines care and treatment as, "services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only 'as needed' or under a contractual arrangement." 42 C.F.R. § 51.2.

14. The facilities operated by defendant, including NPHI, are facilities that provide treatment services to individuals with complex medical, behavioral and neuropsychiatric conditions including individuals with developmental or intellectual disabilities.

15. Defendant's hospitals are defined as a "facility" under both the PAIMI and PADD Acts and their implementing regulations. 42 U.S.C. 10802(3); 45 C.F.R. 1326.27; 42 U.S.C. 15043(a)(2)(H).

16. IDR's federal mandate includes the responsibility to ensure that the rights of individuals with mental illness and developmental disabilities are protected, and advocate on their behalf. Thus, IDR serves the important function of providing independent oversight of programs and facilities, including the hospitals owned by defendant, that offer treatment and care to individuals with mental illness and developmental disabilities in Indiana.

17. In an effort to ensure that individuals receiving mental health services from private providers, such as defendant, are not being subjected to civil or conditional rights violations, IDR has attempted to conduct monitoring visits within defendant's Indianapolis hospital.

**IDR's Denial of Access**

18. Pursuant to 42 C.F.R. § 51.42(e), when accessing a facility for monitoring purposes, such as the visits to NPHI, under PAIMI, "[t]he system shall make every effort to ensure that … guardians of individuals in the care of a facility are informed that the system will be monitoring activities at the facility … ."

19. On or about June 13, 2018, undersigned counsel sent a letter to Christy Gilbert, defendant's President and Chief Operating Officer, to provide notice that IDR intends to conduct monitoring visits within NPHI.

20. IDR sent this correspondence to Ms. Gilbert in compliance with 42 C.F.R. § 51.42(e), to request that defendant inform the guardians of any patients within their care of IDR's intent to conduct monitoring activities at the facility and that in the course of monitoring activities, IDR may have access to the guardians' ward.

21. On June 19, 2018, undersigned counsel received a telephone call from defendant's counsel seeking the legal authority for IDR's request that defendant provide the aforementioned notification to their patients' guardians.

22. On June 20, 2018, undersigned counsel sent an email to defendant's counsel explaining that IDR is exercising its due diligence in notifying any guardians of its monitoring activities within the defendant's facility pursuant to 42 C.F.R. § 51.42(e).

23. Over the next several days, IDR exchanged email correspondence with defendant's counsel discussing IDR's statutory rights to conduct monitoring activities within the Indianapolis hospital.

24. Despite these written requests, IDR has been denied access to defendant's facilities, patients, and employees. Defendant is aware of IDR's access authority, but has steadfastly refused to comply stating that IDR should "get a court order."

25. On June 27, 2017, defendant's counsel submitted a written statement of the reasons why defendant is denying IDR access to its facilities.

26. Defendant's June 27 correspondence provides a history of licensure citations upon NPHI by its licensing agency, the Department of Mental Health and Addiction ("DMHA") of the Indiana Family and Social Services Administration; the defendant's objections to such citations and censures, and identifies ongoing litigation between defendant and DMHA.

27. Defendant, by counsel, has denied IDR's access to monitor its facility for the reason that defendant believes it has been subjected to enough monitoring activities by state and federal agencies. Defendant further opines that IDR's actions are "another example of DMHA's efforts to enlist federal and state agencies to assist in its campaign against NPHI."

28. The PAIMI Act requires that the designated system, whether it is a public or private entity, "shall be independent of any agency which provides treatment or services (other than advocacy services) to individuals with mental illness" 42 U.S.C. § 10805(a)(2). *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 368 (7th Cir. 2010).

29. While IDR is a state agency, it is independent of state administration and is statutorily prohibited from acting as an agent of DMHA.

30. The Seventh Circuit has analyzed the relationship between IDR, formerly IPAS, and DMHA finding that "given [IDR's] unusual independence from state government, the special federal responsibilities it carries out, and the direct federal funding it receives, [IDR] is closer to being a specialized agent of the federal government for these purposes than it is to being an ordinary state agency." 603 F.3d at 373.

31. Due to defendant's refusal to comply with access provisions of the Acts identified in this complaint, IDR has suffered, and will continue to suffer irreparable harm for which there is no

remedy at law, as it is prevented from carrying out one of its core responsibilities, monitoring compliance with respect to the rights and safety of individuals receiving mental health services and treatment.

### Frustration of Mission and Diversion of Resources

32. P&A systems were created to protect people with disabilities housed in facilities, such as the ones owned by the defendant, and are statutorily independent from other state agencies and service providers in order to carry out this purpose.

33. Despite numerous requests, defendant has failed to provide IDR with a *legal* basis for the denial of access to its facility in Indianapolis. The only reasons provided were that defendant has been monitored by other state agencies and they subjectively deem such monitoring efforts, which have led to licensing actions and litigation, sufficient. Further, defendant states that DMHA is attempting to usurp the trial rules in litigation to which IDR is not a party.

34. While defendant's position that IDR is monitoring its hospital in an effort to help DMHA skirt the Indiana Rules of Trial Procedure is baseless and false, it is also not defensible to its denial of access.

35. The clear language of 42 U.S.C. § 10805(a)(3), allowing P&As access to facilities providing care and treatment to individuals with disabilities, and the broad definition of the term 'access' in the PAIMI Act, preempts state discovery and trial rules that may require a court order before access may be granted to a facility.

36. Courts have found that P&As, through the PAIMI Act, are to have ready access to psychiatric institutions "so as to serve effectively as an advocate for those individuals with mental illness" and denial of such access "serves as an obstacle to the accomplishment and execution of the purposes of [the PAIMI Act]." *Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp.

2d 1039, 1048 (E.D. Wis. 2001) (quoting *Oklahoma Disability Law Ctr., Inc. v. Dillon Family & Youth Servs., Inc.,* 879 F. Supp. 1110, 1111 (N.D. Okla. 1995)).

37.     IDR's access authority to monitor the exact type of facilities operated by the defendant is mandated by federal law and is inherently broad.

38.     Defendant's position, which is contrary to well-founded law, has perceptibly impaired IDR's ability to efficiently conduct its monitoring activities and the instant litigation is an unnecessary drain on IDR's resources.

## Jury Demand

39.     Plaintiff requests a trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiff Indiana Disability Rights respectfully urges the Court to:

   a.   exercise jurisdiction over this action;

   b.   declare that defendant's actions and inactions violate the federal PAIMI Act;

   c.   enjoin defendant to allow IDR unaccompanied access to all facilities owned by NeuroPsychiatric Hospitals, including access to all patients and employees, without advance notice and at any reasonable time during and after business hours;

   d.   declare that IDR has suffered injury in fact in the form of frustration of its mission and diversion of resources and that it is the prevailing party for the purpose of attorney fees; and,

   e.   issue such other relief as the Court may deem just and proper.

Respectfully submitted,

*s/ Nikki G. Ashmore*
Nikki G. Ashmore, Atty No. 31209-49
Staff Attorney

Indiana Disability Rights
4701 North Keystone Avenue, Suite 222
Indianapolis, Indiana 46205
(317) 722-3445
Nashmore@indianadisabilityrights.org


*s/ Melissa L. Keyes*
Melissa L. Keyes, Atty No. 30152-49
Legal Director
Indiana Disability Rights
4701 North Keystone Avenue, Suite 222
Indianapolis, Indiana 46205
(317) 722-3463
mkeyes@indianadisabilityrights.org

*Attorneys for Plaintiff*