## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA DISABILITY RIGHTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case no. 1:18-cv-2106-WTL-TAB |
| | ) |
| NEUROPSYCHIATRIC HOSPITALS LLC, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT

Defendant, for its Answer to Plaintiff's Complaint answers and states as follows:

1. Plaintiff Indiana Disability Rights ("IDR"), an independent state agency, is Indiana's designated system authorized by Congress to provide protection and advocacy services to individuals with mental illness, developmental disabilities, and individuals with other disabilities.

**ANSWER:** Defendant admits the allegations of Paragraph 1.

2. Pursuant to its statutory authority, IDR has undertaken an initiative to monitor the conditions of facilities and patients in the psychiatric hospitals owned by defendant NeuroPsychiatric Hospitals LLC.

**ANSWER:** Paragraph 2 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 2.

3. Upon information and belief, NeuroPsychiatric Hospitals LLC (hereinafter "defendant") operates three psychiatric hospitals within Indiana that provide inpatient mental health treatment. Defendant's corporate office is located in South Bend, Indiana, and it currently owns and operates hospitals in Indianapolis, Mishawaka, and Bremen with a facility under development in Northwest Indiana.

**ANSWER:** Defendant admits that it owns separate entities that operate psychiatric hospitals within Indiana that provide inpatient mental health treatment. Defendant admits that its corporate office is located in South Bend, Indiana, and that it owns an entity with a facility under development in northwest Indiana.

4. Defendant, by counsel, has denied IDR staff access to its facility, staff and patients within NeuroPsychiatric Hospital of Indianapolis ("NPHI") located at 6720 Parkdale Place, Indianapolis, Indiana 46254. IDR has been forced to bring this action against defendant seeking access to its facilities, patients and employees in accord with IDR's federal statutory mandate.

**ANSWER:** Defendant admits that it has permitted IDR access to its subsidiaries' facilities on prior occasions. Defendant denies the implicit allegation that the recent IDR request is reasonable. Defendant denies any remaining allegations in Paragraph 4.

5. IDR seeks declaratory, injunctive, and monetary relief against defendant for its refusal to allow IDR access to monitor its facility as expressly authorized by law. IDR filed the instant lawsuit after making repeated failed efforts to resolve this matter with defendant.

**ANSWER:** Paragraph 5 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 5.

## Nature of the Action

6. The right of IDR, as the Protection and Advocacy System for Indiana, to bring this action for unaccompanied access to defendant's facilities is provided by the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801 et seq., and its supporting regulations at 42 C.F.R. § 51.42, which state:

> [IDR] shall have reasonable unaccompanied access to facilities including all areas which are used by residents, are accessible to residents, and to programs and their residents at reasonable times, which at a minimum shall include normal working hours and visiting hours. Residents include adults or minors who have legal guardians or conservators. P&A activities shall be conducted so as to minimize interference with facility programs, respect residents' privacy interests, and honor a

resident's request to terminate an interview. This access is for the purpose of:

(1) Providing information and training on, and referral to programs addressing the needs of individuals with mental illness, and information and training about individual rights and the protection and advocacy services available from the P&A system, including the name, address, and telephone number of the P&A system.

(2) Monitoring compliance with respect to the rights and safety of residents; and,

(3) Inspecting, viewing and photographing all areas of the facility which are used by residents or are accessible to residents.

42 C.F.R. § 51.42(c)(1-3).

**ANSWER:** Defendant admits that the regulation is correctly quoted. The remainder of Paragraph 5 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 5.

## Jurisdiction and Venue

6. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331.

**ANSWER:** Paragraph 6 calls for a legal conclusion to which no response is required.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim occurred within this district.

**ANSWER:** Paragraph 7 calls for a legal conclusion to which no response is required.

## P&A Monitoring Access Authority

8. In 1978, the Protection and Advocacy for People with Disabilities ("PADD Act") established the Protection and Advocacy ("P&A") System to monitor and investigate incidents of abuse and neglect and to pursue legal, administrative, and other appropriate remedies to safeguard the rights of individuals with developmental disabilities. Congress extended the protection and advocacy mandate to cover individuals with mental illness with the enactment of the PAIMI Act in 1986.

**ANSWER:** Defendant admits the allegations set forth in Paragraph 8.

9. To receive federal funding under the PAIMI, PADD, and PAIR Acts, states must have P&A system in effect. IDR is, and has always been, designated as Indiana's P&A system.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in Paragraph 9 and therefore denies same.

10. The PAIMI and PADD Acts provide IDR reasonable unaccompanied access to all residents of a facility at reasonable times to provide P&A service and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, to meet and communicate privately with service recipients, both formally and informally, and to view and photograph all areas of the facility that are used by residents or are accessible to residents. 42 U.S.C 10805(3); 42 C.F.R. 51.42(c) and (d); 42 U.S.C. 15043(H); 45 C.F.R. 1326.21(e) and (f).

**ANSWER:** Paragraph 10 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 10.

11. Under the PAIMI Act, "any public or private residential setting that provides overnight care accompanied by treatment services" is a facility which a P&A is authorized to access and monitor.

**ANSWER:** Paragraph 11 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 11.

12. "Facilities include, but are not limited to the following: **general and psychiatric hospitals**, nursing homes, board and care homes, community housing, juvenile detention facilities, homeless shelters, and jails and prisons, including all general areas as well as special mental health or forensic units." 42 C.F.R. § 51.2 (emphasis added).

**ANSWER:** Defendant admits that the regulation is correctly quoted.

13. Further, the PAIMI Act defines care and treatment as, "services provided to prevent, identify, reduce or stabilize mental illness or emotional impairment such as mental health screening, evaluation, counseling, biomedical, behavioral and psychotherapies, supportive or other adjunctive therapies, medication supervision, special education and rehabilitation, even if only 'as needed' or under a contractual arrangement." 42 C.F.R. § 51.2.

**ANSWER:** Defendant admits that the regulation is correctly quoted.

14. The facilities operated by defendant, including NPHI, are facilities that provide treatment services to individuals with complex medical, behavioral and neuropsychiatric conditions including individuals with developmental or intellectual disabilities.

**ANSWER:** Defendant admits the allegations set forth in Paragraph 14.

15. Defendant's hospitals are defined as a "facility" under both the PAIMI and PADD Acts and their implementing regulations. 42 U.S.C. 10802(3); 45 C.F.R. 1326.27; 42 U.S.C. 15043(a)(2)(H).

**ANSWER:** Defendant admits the allegations set forth in Paragraph 15.

16. IDR's federal mandate includes the responsibility to ensure that the rights of individuals with mental illness and developmental disabilities are protected, and advocate on their behalf. Thus, IDR serves the important function of providing independent oversight of programs and facilities, including the hospitals owned by defendant, that offer treatment and care to individuals with mental illness and developmental disabilities in Indiana.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations set forth in Paragraph 16 and therefore denies same.

17. In an effort to ensure that individuals receiving mental health services from private providers, such as defendant, are not being subjected to civil or conditional rights violations, IDR has attempted to conduct monitoring visits within defendant's Indianapolis hospital.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 17.

### IDR's Denial of Access

18. Pursuant to 42 C.F.R. § 51.42(e), when accessing a facility for monitoring purposes, such as the visits to NPHI, under PAIMI, "[t]he system shall make every effort to ensure that … guardians of individuals in the care of a facility are informed that the system will be monitoring activities at the facility … ."

**ANSWER:** Paragraph 18 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

19. On or about June 13, 2018, undersigned counsel sent a letter to Christy Gilbert, defendant's President and Chief Operating Officer, to provide notice that IDR intends to conduct monitoring visits within NPHI.

**ANSWER:** Defendant admits that the Plaintiff's counsel sent a letter to Christy Gilbert on June 13, 2018. Defendant states that the letter speaks for itself and denies any remaining allegation set forth in Paragraph 19.

20. IDR sent this correspondence to Ms. Gilbert in compliance with 42 C.F.R. § 51.42(e), to request that defendant inform the guardians of any patients within their care of IDR's intent to conduct monitoring activities at the facility and that in the course of monitoring activities, IDR may have access to the guardians' ward.

**ANSWER:** Paragraph 20 calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies same.

21. On June 19, 2018, undersigned counsel received a telephone call from defendant's counsel seeking the legal authority for IDR's request that defendant provide the aforementioned notification to their patients' guardians.

**ANSWER:** Defendant admits the allegations set forth in Paragraph 21.

22. On June 20, 2018, undersigned counsel sent an email to defendant's counsel explaining that IDR is exercising its due diligence in notifying any guardians of its monitoring activities within the defendant's facility pursuant to 42 C.F.R. § 51.42(e).

**ANSWER:** Defendant admits that the Plaintiff's counsel sent an email on June 20, 2018. Defendant states that the letter speaks for itself and denies any remaining allegation set forth in Paragraph 22.

23. Over the next several days, IDR exchanged email correspondence with defendant's counsel discussing IDR's statutory rights to conduct monitoring activities within the Indianapolis hospital.

**ANSWER:** Defendant admits that Paragraph 23 is a partial recitation of events. Defendant further states that IDR does not have the right to use its authority to further the interests of third parties or to insist on action beyond its statutory and regulatory authority. Defendant denies the remaining allegations set forth in Paragraph 24.

24. Despite these written requests, IDR has been denied access to defendant's facilities, patients, and employees. Defendant is aware of IDR's access authority, but has steadfastly refused to comply stating that IDR should "get a court order."

**ANSWER:** Defendant admits that Paragraph 24 is a partial recitation of events. Defendant further states that IDR does not have the right to use its authority to further the interests of third parties or to insist on action beyond its statutory and regulatory authority. Defendant denies the remaining allegations set forth in Paragraph 24.

25. On June 27, 2017, defendant's counsel submitted a written statement of the reasons why defendant is denying IDR access to its facilities.

**ANSWER:** Defendant admits the allegations of Paragraph 25.

26. Defendant's June 27 correspondence provides a history of licensure citations upon NPHI by its licensing agency, the Department of Mental Health and Addiction ("DMHA") of the Indiana Family and Social Services Administration; the defendant's objections to such citations and censures, and identifies ongoing litigation between defendant and DMHA.

**ANSWER:** Defendant admits that Paragraph 26 is a partial recitation of events,

27. Defendant, by counsel, has denied IDR's access to monitor its facility for the reason that defendant believes it has been subjected to enough monitoring activities by state and federal agencies. Defendant further opines that IDR's actions are "another example of DMHA's efforts to enlist federal and state agencies to assist in its campaign against NPHI."

**ANSWER:** Defendant admits that Paragraph 27 is a partial recitation of the events.

28. The PAIMI Act requires that the designated system, whether it is a public or private entity, "shall be independent of any agency which provides treatment or services (other than advocacy services) to individuals with mental illness" 42 U.S.C. § 10805(a)(2). *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 368 (7th Cir. 2010).

**ANSWER:** Defendant admits the allegations of Paragraph 28.

29. While IDR is a state agency, it is independent of state administration and is statutorily prohibited from acting as an agent of DMHA.

**ANSWER:** Defendant admits that IDR is supposed to be independent. Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the remaining allegations of Paragraph 29 and therefore denies same.

30. The Seventh Circuit has analyzed the relationship between IDR, formerly IPAS, and DMHA finding that "given [IDR's] unusual independence from state government, the special federal responsibilities it carries out, and the direct federal funding it receives, [IDR] is closer to being a specialized agent of the federal government for these purposes than it is to being an ordinary

state agency." 603 F.3d at 373.

**ANSWER:** Paragraph 30 calls for a legal conclusion to which no response is required. Defendant further states that the case speaks for itself and denies any inference to the contrary in Paragraph 30.

31. Due to defendant's refusal to comply with access provisions of the Acts identified in this complaint, IDR has suffered, and will continue to suffer irreparable harm for which there is no remedy at law, as it is prevented from carrying out one of its core responsibilities, monitoring compliance with respect to the rights and safety of individuals receiving mental health services and treatment.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 31.

### Frustration of Mission and Diversion of Resources

32. P&A systems were created to protect people with disabilities housed in facilities, such as the ones owned by the defendant, and are statutorily independent from other state agencies and service providers in order to carry out this purpose.

**ANSWER:** Defendant admits that P&A systems were created to protect people with disabilities housed in facilities, such as the ones owned by the defendant and that they are supposed to be independent. Defendant denies the remaining allegations set forth in Paragraph 32.

33. Despite numerous requests, defendant has failed to provide IDR with a *legal* basis for the denial of access to its facility in Indianapolis. The only reasons provided were that defendant has been monitored by other state agencies and they subjectively deem such monitoring efforts, which have led to licensing actions and litigation, sufficient. Further, defendant states that DMHA is attempting to usurp the trial rules in litigation to which IDR is not a party.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 33.

34. While defendant's position that IDR is monitoring its hospital in an effort to help DMHA skirt the Indiana Rules of Trial Procedure is baseless and false, it is also not defensible to its

denial of access.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 34.

35. The clear language of 42 U.S.C. § 10805(a)(3), allowing P&As access to facilities providing care and treatment to individuals with disabilities, and the broad definition of the term 'access' in the PAIMI Act, preempts state discovery and trial rules that may require a court order before access may be granted to a facility.

**ANSWER:** Paragraph 35 calls for a legal conclusion to which no response is required. Defendant denies the allegations in Paragraph 35.

36. Courts have found that P&As, through the PAIMI Act, are to have ready access to psychiatric institutions "so as to serve effectively as an advocate for those individuals with mental illness" and denial of such access "serves as an obstacle to the accomplishment and execution of the purposes of [the PAIMI Act]." *Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1048 (E.D. Wis. 2001) (quoting *Oklahoma Disability Law Ctr., Inc. v. Dillon Family & Youth Servs., Inc.,* 879 F. Supp. 1110, 1111 (N.D. Okla. 1995)).

**ANSWER:** Paragraph 36 calls for a legal conclusion to which no response is required. Defendant states that those cases speak for themselves and denies any inference to the contrary in Paragraph 36.

37. IDR's access authority to monitor the exact type of facilities operated by the defendant is mandated by federal law and is inherently broad.

**ANSWER:** Paragraph 37 calls for a legal conclusion to which no response is required. Defendant states that the governing statutes and regulations speak for themselves and denies any inference to the contrary in Paragraph 37.

38. Defendant's position, which is contrary to well-founded law, has perceptibly impaired IDR's ability to efficiently conduct its monitoring activities and the instant litigation is an unnecessary drain on IDR's resources.

**ANSWER:** Defendant denies the allegations set forth in Paragraph 38.

WHEREFORE, Defendant prays that Plaintiff take nothing by way of its Complaint against Neuropsychiatric Hospitals LLC, and for all other just and proper relief.

## AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state a claim upon which relief may be granted.
2. Plaintiff's request is unreasonable.
3. Plaintiff's attempt to require a certain type of notification is not permitted by statute.
4. Plaintiff lacks standing.
5. Plaintiff's claims are barred by their failure to exhaust administrative remedies.
6. Plaintiff's claims are barred by abstention, including by virtue of ongoing proceedings before state administrative agencies.

## COUNTERCLAIM

1. Counterclaim Plaintiff operates a hospital system that focuses on treating patients with complex medical, behavioral, and psychiatric issues.

2. In or about April, 2016, a representative of Counterclaim Defendant, Indiana Disability Rights ("IDR") toured one of the hospital system facilities.

3. In the course of that tour, this representative informed hospital staff that she "had heard about" the hospital, and that IDR saw the hospital system as "adversaries".

4. Within the next two weeks, a representative entered another facility and requested, and obtained, hospital policies.

5. In May of 2016, IDR sent a letter to the facility stating that it "intends to begin monitoring" the facility.

6. The IDR demanded that the facility provide IDR with a list of all patients, as well as the contact information for any guardians or parents of all patients.

7. IDR provided no statutory or regulatory basis for such a demand.

8. In addition, IDR demanded that the facility notify all future patients that IDR is "monitoring" the facility.

9. IDR provided no statutory or regulatory basis for such a demand.

10. In August of 2017, an individual appeared at a facility, claiming to be a representative of IDR, however he did not have any identification, so access was initially denied.

11. However, once Counterclaim Plaintiff was able to verify the individual's identity and employment with IDR, the Counterclaim Plaintiff granted access to that individual.

12. When this representative returned to the facility, he suggested that things would "go easier" on the facilities if they submitted to voluntary supervision by IDR.

13. However, the representative gave no indication of the reason why this would be necessary.

14. In June of 2018, IDR again reiterated its desire that the facility notify all future patients that IDR is "monitoring" the facility.

15. In the previous efforts by IDR to have access to the facilities, Counterclaim Plaintiff cooperated to the full extent required (and permitted) by law, and IDR did not identify any areas of non-compliance.

16. However, Counterclaim Plaintiff believes that Counterclaim Defendant is insisting that Counterclaim Plaintiff inform future patients that the facilities "have been selected for monitoring" to imply that Counterclaim Plaintiff has acted improperly and is therefore in need of monitoring in an effort to harm the reputation and business of Counterclaim Plaintiff.

17. Moreover, IDR is not the first administrative agency to improperly target and harass Counterclaim Plaintiff.

18. On information and belief, IDR has been acting in concert and coordination with these third parties in their targeting and harassment of Counterclaim Plaintiff in an effort to harm the reputation and business of Counterclaim Plaintiff.

## COUNT I – ABUSE OF PROCESS

19. Counterclaim Plaintiffs hereby incorporate by reference paragraphs 1 through 18 above as if fully set forth herein.

20. On information and belief, Counterclaim Defendant has misused the tools available to it to aid third parties rather than in a good faith discharge of its statutory and regulatory duties.

21. In addition, Counterclaim Defendant has misused the tools available to it to coerce the Counterclaim Plaintiff into "voluntarily" submitting to monitoring activities by Counterclaim Defendant for which there is no independent statutory or regulatory authority.

22. It is likely that if reasonable restrictions are not imposed on Counterclaim Defendant, it will continue to attempt to use its statutory and regulatory authority to support the ulterior motives

of third parties and to attempt to coerce Counterclaim Plaintiff into agreeing with the demanded but unspecified monitoring.

## COUNT II – 42 U.S.C. §1983

23. Counterclaim Plaintiff hereby incorporates by reference paragraphs 1 through 22 above as if fully set forth herein.

24. Counterclaim Defendant acting under color of law has misused the tools available to it under state and federal law to assist in the ongoing targeting and harassment of Counterclaim Plaintiff.

25. Counterclaim Plaintiff has been damaged and will continue to be damaged by this misuse of state and federal law in denial of Counterclaim Plaintiff's due process rights (both procedural and substantive) and the right to equal protection, and the right to be free from arbitrary government action.

WHEREFORE, Counterclaim Plaintiff prays that judgment be entered in its favor and against Counterclaim Defendant in a manner that will remedy the damages incurred, and for all other just and proper relief.

Respectfully submitted,

DELK McNALLY LLP

/s/ Michael T. McNally
Michael T. McNally, Attorney No. 23676-49
*Attorney for Defendant*

610 N. Rangeline Road
Carmel, IN 46033
Telephone: 317/442-4444
Facsimile: 888/453-0545

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the above and foregoing has been served via the Court's electronic case filing system this 4th day of September, 2018, to the following:

    Nikki G. Ashmore
    nashmore@indianadisabilityrights.org

    Melissa L. Keyes
    mkeyes@indianadisabilityrights.org


    /s/ Michael T. McNally
    Michael T. McNally


DELK McNALLY LLP
mcnally@delkmcnally.com