# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| **INDIANA DISABILITY RIGHTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case no. 1:18-cv-02106-JRS-TAB |
| | ) |
| **NEUROPSYCHIATRIC HOSPITALS LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## INDIANA DISABILITY RIGHTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COUNTERCLAIMS BY NEUROPSYCHIATRIC HOSPITALS

Plaintiff and counter defendant Indiana Disability Rights ("IDR") and third party Dawn Adams, executive director of IDR, by counsel, respectfully submit the following memorandum in support of their motion to dismiss. IDR and Adams urge the Court to grant the motion and dismiss the amended counterclaims filed on October 9, 2018. The counterclaims should be dismissed as defendant and counter plaintiff NeuroPsychiatric Hospitals LLC ("NPH") has failed to state a claim for which relief may be granted with respect to both the state and federal claims.

### I. Introduction

On July 11, 2018, IDR filed a complaint for damages, declarative, and injunctive relief against NPH in an effort to enforce its monitoring access authority under the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801 et seq. (ECF 1.) As acknowledged by NPH in answer to IDR's complaint, IDR, an independent state agency, is Indiana's designated system authorized by Congress to provide protection and advocacy services to individuals with mental illness, developmental disabilities, and individuals with other

disabilities. (ECF 17, ¶ 1.) On September 4, 2018, defendant and counter plaintiff NPH filed its answer to IDR's complaint and simultaneously filed two counterclaims against IDR. On September 24, 2018, IDR moved to dismiss the counterclaims in their entirety. On October 9, 2018, in response to IDR's motion to dismiss, NPH filed an amended answer, affirmative defenses, counterclaims against IDR, and a third-party complaint against IDR's Executive Director Dawn Adams.[1] While Adams was never served with a subpoena or properly served with the third party complaint, and is therefore not a party to this action, the claims against her fail as a matter of law and are briefed herein. IDR and Adams now move to dismiss the counterclaims as NPH's amended filing of October 9, failed to correct the legal deficiencies.

NPH operates three psychiatric hospitals within Indiana that provide inpatient mental health treatment. (ECF 17, pg. 2 ¶ 3.) The PAIMI Act calls for protection and advocacy agencies, such as IDR, to have reasonable unaccompanied access to facilities that provide services to individuals with mental illness. 42 C.F.R. § 51.42(c)(1-3). By statute, IDR is to have access to all areas of the facility which are used by and accessible to residents, at a minimum during normal business hours and visiting hours, in order to monitor "compliance with respect to the rights and safety of residents." *Id*. 42 C.F.R. § 51.42(c)(2). As admitted by NPH, the hospitals that it operates are defined as facilities under both the PAIMI Act and the Protection and Advocacy for People with Disabilities ("PADD Act"). (ECF 17, pg. 5 ¶¶ 12, 14.)

Pursuant to its establishing regulations, IDR has attempted to conduct monitoring visits of NPH's facility in Indianapolis. A dispute arose between the parties as NPH believes IDR's monitoring efforts are an attempt to harm its reputation and business. (ECF 17, pg. 14 ¶ 20.) NPH further asserts that IDR is working with or at the direction of another state agency in an attempt to

---

[1] Dawn Adams, who has not been served, is not yet a party to this lawsuit and neither Ms. Adams nor IDR waives service by mention of the action in the instant memorandum.

harm NPH's business. (ECF 17, pg. 14 ¶ 22.) NPH is yet to provide any factual basis to support the allegation that IDR is acting to harm the reputation of NPH or that it is working at the direction of any other state agency. Specifically, in NPH's written response as to why it has denied IDR access to its facilities, NPH provided a history of licensure citations initiated by the Indiana Department of Mental Health and Addiction ("DMHA") of the Indiana Family and Social Services Administration, and believes, without basis, that the actions of IDR have been orchestrated by DMHA to enlist other agencies in a campaign against NPH. (ECF 17, pg. 8 ¶ 26; pg. 14 ¶ 22.) In its counterclaims, NPH fails to provide any facts as to how the DMHA licensing action is related to IDR's initiation of monitoring activities or any information linking the two agencies, it simply states conclusively that the two agencies are somehow working in concert.

NPH simultaneously filed two counterclaims against IDR with its amended answer. (ECF 17, pg. 12-16.) In its counterclaim, NPH asserts that in April 2016, a representative of IDR toured one of its hospitals and two weeks later entered another facility and obtained hospital policies. (ECF 17, pg. 13 ¶¶ 4, 8.) NPH states that after the visit by IDR staff to a NPH facility in April, 2016, NPH contacted IDR's executive director Dawn Adams who stated during this discussion that Adams had heard about NPH's hospital and viewed NPH as an adverse party. (ECF 17, pg. 13 ¶¶ 5, 7.) In May 2016, IDR sent a letter to NPH notifying it that IDR will be conducting monitoring efforts and requested a list of patients and guardianship information. (ECF 17, pg. 13 ¶¶ 9, 10.) NPH alleges that IDR, formerly IPAS, failed to provide a statutory or regulatory basis for this request. (ECF 17, pg. 13 ¶ 13.) Finally, in August 2017, NPH states that another IDR employee visited one of its facilities and stated that things would be easier if NPH simply cooperated with IDR's access authority. (ECF 17, pg. 13-14 ¶¶ 14, 16.) These facts appear to form the basis of NPH's counterclaims.

In count one, NPH brings a state tort claim for abuse of process asserting that IDR and its executive director Dawn Adams have misused their statutory authority to aid a third party. (ECF 17, pg. 15 ¶ 26.) NPH further alleges that IDR has attempted to coerce it into voluntarily submitting to monitoring activities. (ECF 17, pg. 15 ¶ 27.)

In count two, NPH brings claims pursuant to 42 U.S.C. Section 1983 alleging that IDR and its executive director Dawn Adams, while acting under color of law, have misused state and federal law and has denied NPH procedural and substantive due process, equal protection, and the right to be free from arbitrary government action. (ECF 17, pg. 15 ¶¶ 30, 31.) NPH seeks unspecified monetary damages as relief for its counter claims.

## II. Legal Standard for dismissal

IDR's motion to dismiss rests upon Rule 12(b)(6) for failure to state a claim upon which relief may be granted. When deciding a Rule 12(b)(6) motion to dismiss, the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kirk v. City of Kokomo*, 772 F. Supp. 2d 983, 988 (S.D. Ind. 2011) (citing *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991)). In order to proceed, the factual allegations in the complaint must be sufficient to "raise the possibility of relief above a speculative level." *E.E.O.C. v. Concentra Health Servs.*, Inc., 496 F.3d 773, 776 (7th Cir. 2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

## III. Argument

**A. NPH cannot maintain a tort claim for abuse of process against IDR or Dawn Adams.**

NPH brings a state tort claim for abuse of process against both IDR and its executive director Dawn Adams for allegedly misusing federal access authority to harm NPH's business and reputation. As NPH failed to serve Dawn Adams with a copy of the amended claims or a subpoena, she is not a proper party to this lawsuit. However, in anticipation of NPH now serving Adams, the claims against her should still be dismissed for the reasons stated below. NPH cannot maintain this cause of action as the facts presented fail to support the requisite elements of an abuse of process claim. Further, this claim is barred against Dawn Adams by the Indiana Tort Claims Act.

**i. NPH has failed to establish the requisite elements of an abuse of process claim.**

NPH claims that IDR and Dawn Adams have committed abuse of process by asserting the mandated, federal monitoring access authority granted to IDR in order to conduct monitoring visits at NPH's Indianapolis facility. NPH alleges, without basis, that IDR and Adams have misused the tools available to aid a third party instead of discharging their statutory duties in good faith. NPH further states that IDR and Adams have attempted to coerce it into submitting to monitoring activities for which there is no independent statutory or regulatory authority, and opines that IDR and Dawn Adams may continue to assert this regulatory authority to support the ulterior motives of a third party, who is not a party to this action. This argument fails as both a matter of fact and law.

In order to establish an abuse of process cause of action, the party asserting the claim must prove two elements. First, that there is an ulterior purpose for the action and second, that the process being utilized is not proper in the regular conduct of such proceeding. *Lindsay v. Jenkins*, 574 N.E.2d 324, 326 (Ind. Ct. App. 1991) (citing *Groen v. Elkins* (1990), Ind.App., 551 N.E.2d 876, 878, trans. denied.) "[O]therwise stated, abuse of process requires a finding of misuse or misapplication of process, for an end other than that which it was designed to accomplish." *Yater*

*v. Coy*, 681 N.E.2d 232, 234 (Ind. Ct. App. 1997) (citing *Broadhurst v. Moenning*, 633 N.E.2d 326, 333 (Ind.Ct.App.1994).)

When a party is utilizing a legal process to accomplish the intended outcome, it may not be found liable for abuse of process. *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. Ct. App. 1996). "A party's intent is irrelevant where his acts are procedurally and substantively proper under the circumstances." *Id*. (citing *Comfax Corp. v. North American Van Lines, Inc*., 638 N.E.2d 476, 485 (Ind.Ct.App.1994)). Further, even if the plaintiff is able to establish that the process was conducted with bad intentions, which in this case NPH cannot, there is no liability when the process at issue was executed to its authorized conclusion. *Id*. (citing *Groen v. Elkins*, 551 N.E.2d 876, 878–79 (Ind.Ct.App.1990), trans. denied.) Before a Court need even proceed to an examination of motive, the party bringing the action must first establish that the process at issue is being used improperly. *Id*.

In this case, NPH alleges that IDR is acting in bad faith and on behalf of a third party. While IDR denies these unfounded accusations, such an inquiry is unnecessary as the process being utilized is procedurally and substantively proper. The plain language of the PADD and PAIMI Acts expressly authorize a protection and advocacy system and its employees, such as IDR and Dawn Adams, to access facilities, such as the NPH hospitals, in order to monitor and safeguard the rights of individuals with developmental disabilities and mental illness. The PAIMI and PADD Acts provide IDR and its staff reasonable unaccompanied access to all residents of a facility at reasonable times to provide protection and advocacy service and contact information, rights information, monitor compliance with respect to the rights and safety of service recipients, to meet and communicate privately with service recipients, and to view and photograph all areas of the facility that are used by residents or are accessible to residents. 42 U.S.C 10805(3); 42 C.F.R.

51.42(c) and (d); 42 U.S.C. 15043(H); 45 C.F.R. 1326.21(e) and (f). NPH has acknowledged that its hospitals are the type of facilities that fall within the purview of both the PAIMI Act and PADD. (ECF 17, pg. 5 ¶¶ 12, 14.) Further, 42 C.F.R. section 51.31(c), specifically states that "[w]herever possible, the [protection and advocacy agency] should establish an ongoing presence in residential mental health care or treatment facilities, and relevant hospital units."

Federal law establishes that the protection and advocacy agency's right of access to conduct monitoring activities applies despite the existence of any state or local laws or regulations which restrict informal access to minors and adults with legal guardians or conservators. 42 C.F.R. § 51.42(e). Additionally, while IDR did provide notice to NPH of its monitoring efforts, the law is clear that no such notice is required to conduct monitoring visits. See *Pennsylvania Protection and Advocacy, Inc. v Royer-Greaves School for the Blind*, 1999 WL 179797, at *6 (E.D. Pa. March 25, 1999) ("the Court finds that reasonable access includes general facility access without notice, and patient access with twenty-four hour notice… tours of the facility to monitor conditions that the patients are subject to are 'seriously hindered' if they were to take place only with advance notice."); *Robbins v. Budke*, 739 F. Supp. 1479, 1487-88 (D.N.M. 1990) (the protection and advocacy system's ability to observe conditions to which patients are subject is "seriously hindered by the requirement that any tours of the facility take place only with advance notice and only with an administrative chaperon").

While NPH has alleged without factual basis that IDR and Dawn Adams have an improper motive for conducting monitoring efforts of NPH hospitals, there is no question that the process being utilized is expressly authorized by several federal statutes and regulations. As the process at issue is being properly used as intended by the plain language of both the PAIMI and PADD acts,

7

neither IDR nor Dawn Adams can be held liable for abuse of process for enforcing these acts and this claim should be dismissed.

### ii. The claim for abuse of process should be dismissed against Dawn Adams as she is statutorily immune pursuant to the Indiana Tort Claims Act.

Under the Indiana Tort Claims Act ("Act"), NPH's tort claim of abuse of process against IDR executive director, Dawn Adams, is barred as it can only bring this claim against a government agency, not this defendant individually. Specifically, the Act abrogates the state's sovereign immunity to permit claims against the state for misconduct, but it bars a plaintiff from bringing claims against governmental employees personally in two ways. First, if the plaintiff has alleged that an employee was acting within the scope of her employment, the plaintiff is absolutely barred from bringing a claim against the employee personally unless the governmental entity answers that the employee was acting outside the scope of her employment. Ind. Code § 34-13-3-5(b); *see also Miller v. City of Plymouth*, Case No. 2:09-cv-205, 2010 WL 1474205, at * 7 (N.D. Ind. Apr. 9, 2010). Second, if the claim does not state that the employee was acting within the scope of her employment, the claim is still precluded unless the complaint alleges that the employee's acts were criminal, clearly outside the scope of employment, malicious, willful and wanton, or calculated to benefit the employee personally. *Id.* at § 34-13-3-5(c). Further, the complaint cannot make one or more of these allegations conclusory; plaintiff has the burden of asserting a factual basis to support such an allegation. *Id.*

In its amended counterclaim, NPH alleges that one of its agents contacted IDR executive director Dawn Adams after an IDR employee visited an NPH hospital in 2016. (ECF 17; pg. 13, ¶ 5.) During this discussion Adams allegedly stated that she had heard about the NPH hospital and viewed IDR and NPH as adversaries. (ECF 17; pg. 13, ¶ 7.) NPH also alleges that Adams, in her role as executive director, directs the activities of IDR employees. (ECF 17; pg. 13, ¶¶ 5-6.) NPH

then states that IDR, at the direction of Adams, has misused tools available to coerce NPH into submitted to monitoring activities. This appears to be the extent of which NPH alleges wrongdoing as to Adams. NPH appears to allege that Adams is liable under the state tort of abuse of process regarding the above referenced conversation between Adams and an NPH representative and for IDR's assertion of its federally mandated monitoring activities. Adams is employed by IDR and, as alleged by NPH, was acting within the scope of her employment when she spoke with the NPH representative and when she was allegedly involved in the decision for IDR to begin monitoring the NPH Indianapolis hospital. Adams is implicated in this lawsuit simply because she is the executive director.

NPH's state law claim against Adams is barred because the allegations are such that she was acting solely within the scope of her employment. The only allegations of wrongdoing against Adams is that she was involved in a phone conversation in which she allegedly stated the parties are adversaries and that she may have been involved in the decision for IDR to monitor NPH. There are no facts asserted that any of the acts by Adams were criminal, malicious, willful and wanton, or calculated to benefit her personally as required to proceed under Indiana Code section 34-13-3-5(c). By establishing facts that Adams was acting within the scope of her employment, NPH has removed any personal liability until and unless IDR asserts that Adams was acting outside the scope of her employment, which it does not. As such, the Act bars NPH from bringing this state claim against Dawn Adams.

**B. NPH has also failed to establish federal claims against IDR and Dawn Adams.**

NPH cannot maintain the claims against IDR or Dawn Adams under 42 U.S.C. section 1983. First, NPH has failed to assert any factual background for an alleged wrongdoing to form the basis of a section 1983 claim, but instead asserts conclusory statements that do not establish a

9

cognizable violation of federal law. Additionally, NPH's purported federal claims fail as NPH has not established that it has suffered an injury in fact and therefore lacks standing. Further, the claims against IDR fail as a State agency cannot be considered a person under section 1983. Finally, Dawn Adams, as alleged in the complaint, was acting in a supervisory role and section 1983 does not allow for a *respondeat superior* theory of liability.

    **i.**     **NPH failed to plead a sufficient factual basis for its section 1983 claims and has not identified an injury in fact.**

Under rule 8(a)(2) of the Federal Rules of Civil Procedure, plaintiff is required to assert a "short and plain statement of the claim showing that the pleader is entitled to relief." While the plaintiff is not required to set out all factual allegations in a detailed manner, the rule does require for at least a sufficient factual statement that, if plausible on its face, provides a claim for which relief may be granted by the Court. *Twombly,* 550 U.S., at 570, 127 S.Ct. 1955. While the Court must take the plaintiff's allegations as true, he or she is still required to present more than simply a "threadbare [recital] of a cause of action's elements, supported by mere conclusory statements." *Id.,* at 555, 127 S.Ct. 1955. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In the case at hand, NPH has failed to present any factual basis for its alleged constitutional violations. Instead NPH asserts only a conclusory allegation that IDR and Dawn Adams have misused tools available under state and federal law to assist another state agency, who is not a party to this action, in targeting and harassing NPH. There is no factual support for these conclusory statements and no facts presented as to how IDR or Adams have misused IDR's federal statutes. NPH simply asserts, which IDR does not dispute, that IDR staff has visited NPH facilities

in the past and attempted to conduct monitoring activities again earlier this year. All of which are expressly authorized by federal law, as briefed in this memorandum. There is no requirement in either the regulations or case law that require a protection and advocacy system to present a prior or current concern in order to monitor a service provider's facility. NPH's count II, by simply referencing that it has been subjected to due process and equal protection violations without any factual basis as to what actions have been taken or identifying the harm suffered, is insufficient under Rule 8(a)(2) in even the most liberal reading of the claim.

Additionally, the counterclaims filed by NPH should be dismissed as NPH has failed to show that it has suffered an injury for which this Court may provide a remedy. The Supreme Court has established a constitutional minimum to determine if a party has standing to bring a claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The analysis consists of three elements, one of which is that the plaintiff must have suffered an injury in fact, specifically plaintiff must show that it has suffered an invasion of a legally protected interest and the injury is concrete, particularized, actual or imminent. *Id*. The threat of a conjectural or hypothetical injury is insufficient. *Id*. Additionally, plaintiff must present a connection between its injury and the conduct of the defendant, not that plaintiff may be injured by a third party. *Lujan* at 560–61. (internal citations omitted.)

NPH has stated conclusively that IDR has tried to monitor its hospital in order to harm its business reputation. NPH provides no factual support as to why IDR would be motivated to hurt its reputation but more importantly NPH has failed to present any facts that show IDR and this Court what injury it has suffered. NPH has simply stated that it has been damaged, without identifying the alleged injury or loss, and that IDR may continue to damage NPH in the future. NPH has failed to establish a factual basis for both the federal claims asserted and has failed to

assert an injury in fact to establish standing. As such, the allegations asserted under 42 U.S.C. section 1983 should be dismissed.

    ii.    **NPH's federal claim fails as IDR is not considered a person under section 1983.**

Count II of NPH's counterclaim alleges that it was subjected to constitutional violations, by stating conclusively it has been subjected to substantive and procedural due process violations, denied equal protection, and has been subjected to arbitrary government action. NPH fails to provide a factual basis for any of these claims. NPH seeks damages through 42 U.S.C. Section 1983, which provides a civil remedy against any person who, under color of state law, subjects a citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the federal Constitution or federal laws. 42 U.S.C. § 1983. Section 1983 provides: Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court held in *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), that the term "person" in a section 1983 claim does not include States or state officials sued in their official capacities for damages. The Court further opined that "nothing substantial in the legislative history … leads us to believe that Congress intended that the word "person" in § 1983 included the States ... ." *Id.* At 69. For these reasons, NPH's Section 1983 claim against IDR should be dismissed.

    iii.    **Count II should also be dismissed as to Dawn Adams as section 1983 does not allow for vicarious liability.**

In this section 1983 lawsuit, while actions against an individual are authorized, it also requires individualized proof that the named individual was directly responsible for the improper conduct, *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983), and "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986). In other words, in order to be held responsible for the violation of a federally secured right for which a remedy in damages is sought pursuant to 42 U.S.C. section 1983, an individual must have personally participated in the alleged constitutional violation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000).

NPH alleges that Dawn Adams in her role as executive director stated to an NPH representative that their respective agencies are adversaries and that she was involved in the decision that IDR begin monitoring NPH. Somehow, these actions amount to procedural and substantive due process violations, a denial of equal protection to NPH, and the right to be free from arbitrary government action. While these constitutional violations are pled conclusively without factual basis, or even an identification of any loss suffered by NPH, such claims should not proceed against Adams who at most, is alleged to have been involved in the decision for IDR to begin monitoring the NPH Indianapolis hospital under the PAIMI and PADD Acts. NPH fails to provide any facts that Adams has any firsthand knowledge or was involved in any alleged wrongdoing by IDR staff. Adams is being sued for her role in directing the actions of IDR employees generally and cannot be held liable under section 1983 simply because she oversees a process. The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to section 1983 actions. *Zimmerman v. Tribble*, 226 F.3d 568 (7th Cir.2000); *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir.1993); *Adams v. Pate*, 445 F.2d 105, 107 (7th Cir.1971). The Supreme Court has observed that, "[b]ecause vicarious

liability is inappropriate to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through that official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Adams is named in this suit because she oversees the actions of her agency and had a conversation with an unidentified NPH representative, which as briefed above are expressly authorized by federal law and have inflicted no cognizable harm or damage upon NPH. Therefore, to the extent that NPH's claims for relief under section 1983 can be understood as a claim against Adams under a *respondeat superior* theory of liability, which is the only logical reading as NPH fails to allege any personal involvement in any harmful conduct, those claims fail and should be dismissed.

## IV. Conclusion

As asserted in the complaint and this memorandum, part of IDR's required duties under the PAIMI and PADD acts are to conduct monitoring visits within psychiatric hospitals. The federal regulations, statutes, and case law supporting this mandate have been provided to counsel for NPH prior to and during litigation, including as briefed in this memorandum. However, NPH has now used this action to assert baseless claims against IDR and its executive director which is a further, unnecessary drain on the limited resources of both IDR and this Court as well as frustrates the mission IDR is charged to carry out. Because the issue in this matter is so clear and IDR's authority to conduct monitoring efforts are expressly provided for in law, there can be no other reason for NPH to assert these counterclaims other than for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of this litigation.

Based on the authorities and principles set forth above, Indiana Disability Rights and Dawn Adams, by counsel, respectfully urge the Court to grant their motion and dismiss the counterclaims filed by NeuroPsychiatric Hospitals, with prejudice, and for all other proper relief in the premises.

Respectfully submitted,

*s/ Nikki G. Gray*
Nikki G. Gray
Staff Attorney
Attorney No. 31209-49

Indiana Disability Rights
4701 North Keystone Avenue, Suite 222
Indianapolis, Indiana 46205
Phone:   (317) 722-3445
Fax:     (317)722-5564
Email:   NGray@indianadisabilityrights.org

# CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2018, a copy of the foregoing was filed electronically using the Court's CM/ECF system. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing using the Court's system.

*s/ Nikki G. Gray*
Nikki G. Gray
Staff Attorney
Attorney No. 31209-49

Indiana Disability Rights
4701 North Keystone Avenue, Suite 222
Indianapolis, Indiana 46205
Phone:   (317) 722-3445
Fax:     (317)722-5564
Email:   NGray@indianadisabilityrights.org